IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BARBARA BONESSI                                                PLAINTIFF

v.                          No. 4:19-cv-567-DPM

GEORGE GLEASON, et al.                                        DEFENDANTS

MEMORANDUM ORDER AND OPINION

This shareholder derivative action is a companion to *Strathclyde Pension Fund v. Bank OZK*, No. 4:18-cv-793-DPM, which alleges securities fraud arising from two big real estate loans that went bad. Standing in place of the Bank's board of directors, shareholder Barbara Bonessi seeks to press eight claims about the loans by Bank OZK itself against various current and former officers and board members. Her allegations about the bad loans echo Strathclyde's, which the Court summarized in *Doc. 50* in the other case and will not repeat here. The Bank OZK defendants seek dismissal. Their layered arguments start with a pleading matter unique to this kind of case. Bonessi did not demand, before filing suit, that the current board take responding action about the bad loans. She acknowledges her omission. In this circumstance, the controlling Arkansas statute requires, and the applicable Federal Rule of Civil Procedure confirms, that Bonessi must plead "with particularity . . . why [s]he did not make the demand." ARK. CODE. ANN. § 4-27-740(b); *see also* FED. R. CIV. P. 23.1(b)(3)(B). She

acknowledges this obligation, too, pleading that any demand would have been futile. *Doc. 25 at ¶¶ 189–96*. If so, the omission is understandable and excusable. "The law does not require a futile ceremony." *Red Bud Realty Co. v. South*, 153 Ark. 380, 397, 241 S.W. 21, 27 (1922).

Bank OZK is an Arkansas corporation. Because demand futility is a matter of substance, Arkansas law controls. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 108–09 (1991). On this the parties agree. But applicable Arkansas law is sparse. *Red Bud Realty* predates Ark. Code Ann. § 4-27-740 by a half century. More recently, though still a few years before the statute was adopted, the Arkansas Court of Appeals considered whether a pre-suit demand would have been futile in *Morgan v. Robertson*, 271 Ark. 461, 609 S.W.2d 662 (1980). Judge J. Leon Holmes's Order for this Court in *Weinberger v. American Composting, Inc.*, 2012 WL 1190970 (E.D. Ark. 2012), is directly on point. Recognizing the lack of Arkansas precedent, the parties' solid briefs fill gaps with Delaware law. The Court agrees, and predicts that the Arkansas Supreme Court would look to that jurisdiction in developing Arkansas's law. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).

Bank OZK's board has sixteen directors. Appendix A lists the then-serving directors who would have considered any demand from Bonessi, along with their roles. The law presumes that directors are

independent and disinterested. In Cardozo's famous phrase, each must discharge his or her fiduciary duties to the Bank and its shareholders with, "the punctilio of an honor the most sensitive." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). The presumptions of independence and disinterest fade, however, if the stockholder in Bonessi's place casts reasonable doubt on them with good reasons. *Morgan*, 271 Ark. at 466, 609 S.W.2d at 664–65. The legal conclusion that a demand would be futile arises from all the facts, the circumstances being so various that the law cannot define them with precision. *Morgan*, 271 Ark. at 467, 609 S.W.2d at 665. Bonessi does not plead her case as one where independence was doubtful. *Compare Red Bud Realty*, 153 Ark. at 397, 241 S.W. at 27. Instead, she says that, for differing reasons, it's plausible that a majority of the board members were not disinterested. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

The math is against Bonessi. Taking the facts alleged at their strongest, and granting her all reasonable inferences from those facts, there are good reasons to doubt the disinterest of several directors. Mr. Gleason, of course, was knee-deep in the supposedly bad loans. It's difficult, if not impossible, for any person to make a disinterested judgment about his own actions. Mr. East's company had done approximately $250,000 of business with the Bank in 2016, and the prospect of doing more casts a bit of doubt on his disinterestedness. And several other directors—Ms. Freedberg, Mr. Kenny, Mr. Mullen,

-3-

and Mr. Proost—sold some Bank OZK stock during the period when Bonessi alleges that the price was inflated by imperfect disclosures about the bad loans. The Bank OZK defendants explain why this fact is both unremarkable and innocent, which it may be. But the Court calls the issue for Bonessi at this point. That leaves ten directors standing, a majority of the Bank's sixteen-member board. Their names are in bold in Appendix A.

Could they have put Bank OZK's interests first, and weighed any pre-suit demand about the bad loans fairly and impartially? Bonessi answers no, for one main reason. She says a majority of the directors face a substantial likelihood of personal liability on one or more of her claims, thus putting their disinterestedness in doubt. *E.g., Cottrell ex rel. Wal-Mart Stores, Inc. v. Duke*, 829 F.3d 983, 989–90 (8th Cir. 2016). This potential personal liability arises, she continues, because the directors served on various board committees that either knew or should have known about the bad loans and the allegedly faulty public financial disclosures that resulted. Some board members also signed some of those disclosures.

Bonessi's argument fails. She makes no plausible allegation "with particularity," Ark. Code Ann. § 4-27-740(b), that any director (other than Mr. Gleason) actually knew about the problems with these loans. As the Bank defendants emphasize, personal knowledge is essential for personal liability on each claim Bonessi makes. She pleads no adequate

-4-

particulars. She points to the membership of various directors on the board's audit committee, risk committee, and loan committee. See Appendix A. These undisputed roles, though, are insufficient in themselves. "Numerous cases from Delaware courts, as well as other courts applying Delaware law, have time and again held that an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1." *Cottrell*, 829 F.3d at 994 (quotation omitted). The board members were entitled to rely on the information provided by the Bank's officers and employees. *Graham v. Allis-Chalmers Manufacturing Co.*, 41 Del. Ch. 78, 85, 188 A.2d 125, 130 (1963). And Bonessi's complaint lacks any allegation that the members of any of these committees ever got any revealing details or reports about either of the two problem loans. That's the death knell for her amended complaint. The law's presumption of disinterestedness holds. *Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000). On the facts pleaded with specificity, at least ten of Bank OZK's sixteen directors could have considered her demand disinterestedly. Arkansas law therefore required the pre-suit demand that she did not make. ARK. CODE. ANN. § 4-27-740(b); *Morgan*, 271 Ark. at 468, 609 S.W.2d at 665.

\* \* \*

The motion to dismiss, *Doc. 32*, is granted. But the Court declines the Bank defendants' passing suggestion on reply, *Doc. 36 at 42*, to dismiss with prejudice.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

4 September 2020

# Appendix A

| Board Member | Role |
|---|---|
| **Nicholas Brown** | <ul><li>Personnel & Compensation Committee</li><li>Executive Committee</li><li>Information System Steering Committee</li></ul> |
| **Paula Cholmondeley** | <ul><li>Personnel & Compensation Committee</li><li>CRA/Fair Lending Committee</li></ul> |
| **Beverly Cole** | <ul><li>Risk Committee</li><li>CRA/Fair Lending Committee</li></ul> |
| Robert East | <ul><li>Chair, Nominating Committee</li><li>Chair, Governance Committee</li><li>Risk Committee</li><li>Executive Committee</li></ul> |
| Kathleen Franklin | <ul><li>Nominating & Governance Committee</li><li>Personnel & Compensation Committee</li><li>Risk Committee</li></ul> |
| **Catherine B. Freedberg** | <ul><li>Chair, Trust Committee</li><li>Nominating & Governance Committee</li></ul> |
| Jeffrey J. Gearhart | <ul><li>Audit Committee</li><li>Information System Steering Committee</li></ul> |
| George Gleason | <ul><li>Board Chair/CEO</li><li>Chair, Executive Committee</li><li>Directors' Loan Committee</li><li>Asset-Liability Committee</li></ul> |
| **Peter C. Kenny** | <ul><li>Chair, Investment Committee</li><li>Nominating & Governance Committee</li><li>Personnel & Compensation Committee</li><li>Executive Committee</li><li>Asset-Liability Committee</li><li>Directors' Loan Committee</li></ul> |

| | |
|---|---|
| **William A. Koefoed Jr.** | - Chair, Audit Committee<br>- Executive Committee<br>- Information System Steering Committee |
| Walter J. Mullen | - Investment Committee<br>- Risk Committee<br>- Asset-Liability Committee<br>- Directors' Loan Committee |
| **Christopher Orndorff** | - Audit Committee |
| Robert Proost | - Investment Committee<br>- Audit Committee<br>- Asset-Liability Committee<br>- Directors' Loan Committee |
| **John Reynolds** | - Trust Committee<br>- Information System Steering Committee<br>- Personnel & Compensation Committee |
| **Steven Sadoff** | - Risk Committee<br>- Information System Steering Committee |
| **Ross Whipple** | - Chair, Risk Committee<br>- Executive Committee<br>- Directors' Loan Committee |